UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kiangela Butler,<br><br>Plaintiff,<br><br>v.<br><br>Rent Recovery Solutions, LLC,<br><br>Defendant. | Case No.<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Kiangela Butler ("Kiangela"), is a natural person who resided in Aurora, Illinois, at all times relevant to this action.

2. Defendant, Rent Recovery Solutions, LLC ("Rent Recovery"), is a Georgia limited liability company that maintained its principal place of business in Atlanta, Georgia, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Plaintiff's claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.,* because they share a common nucleus of operative fact with Plaintiff's claims under the FDCPA.

1

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. At all times relevant to this action, Rent Recovery collected consumer debts.

7. Rent Recovery regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. The principal source of Rent Recovery's revenue is debt collection.

9. Rent Recovery is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10. At all relevant times, Rent Recovery was engaged in "trade" and "commerce" as defined by 815 ILCS 505/1(f).

11. As described, *infra*, Rent Recovery contacted Kiangela to collect a debt that was incurred primarily for personal, family, or household purposes.

12. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

13. Kiangela is a "consumer" as defined by 15 U.S.C. § 1692a(3).

14. For several years, Kiangela had no option but to reside in public housing in an apartment complex ("Complex").

15. While appreciative of the subsidy, Kiangela's experience with Complex was horrid.

16. Complex refused to repair and replace items and fixtures that became worn out, unusable, or broken as a result of normal tenant wear and tear.

17. Kiangela was forced to pay out of pocket to replace items and fixtures inside her apartment unit that were contractually solely the Complex's responsibility.

18. Complex refused to maintain their units in a habitable condition.

19. Complex refused to engage in reasonable pest and vermin control.

20. Kiangela was forced to pay out of pocket for pest and vermin remediation.

21. Despite repeatedly reporting the issues, Kiangela was forced to reside in an apartment where there were visible dead rodents stuck within the apartment unit's walls and/or fixtures.

22. Complex refused to address the decaying carcases despite being notified of the issue.

23. Kiangela also regularly observed dozens of cockroaches within her apartment unit.

24. Complex refused to address to cockroaches and cockroach nests within her apartment unit.

25. Moreover, to conceal the uninhabitable conditions, Complex bullied residents into falsely reporting positive COVID results to prevent scheduled HUD inspections from taking place.

26. Although repugnant, Complex's two-bedroom unit, was the most Kiangela could afford for her and her three children.

27. Kiangela's mother unexpectantly passed away and, as such, Kiangela offered to provide shelter to Kiangela's sister who previously lived with Kiangela's mother.

28. Tired of the inhabitable conditions, and as a direct result of being constructively evicted, Kiangela terminated her lease and found other affordable housing.

29. Months later, Complex hired Rent Recovery to collect fabricated sums Complex proclaimed Kiangela owed Complex.

30. As a result, Rent Recovery began attempting to collect this fabricated debt.

31. It is the policy, procedure, and practice of Rent Recovery to mail collection letters to addresses that it knows are no longer valid and are vacant.

32. Despite this policy, procedure, and practice of Rent Recovery to report the debt on consumer's credit reports without allowing meaningful time for the letter to be forwarded or returned to Rent Recovery.

33. Consistent with that policy, procedure, and practice, prior to reporting the debt on Kiangela's credit report, Rent Recovery mailed a collection letter to the prior, already vacant, address of Kiangela's apartment at Complex.

34. Not surprisingly, that collection letter was returned to Rent Recovery indicating what Rent Recovery already knew, that Kiangela did not live there.

35. Regardless, Rent Recovery then defamed Kiangela by reporting the debt on Kiangela's credit report causing her credit score and credit worthiness to suffer.

36. Kiangela first learned of the fabricated debt from Rent Recovery reporting the debt to her credit.

37. Once discovered, Kiangela began attempting to convince Rent Recovery that she did not owe any money to Complex.

38. Specifically, she tried explaining the situation to Rent Recovery and she attempted to dispute the debt.

39. For reasons unknown, Rent Recovery refused to cease collection of the fabricated debt.

40. In fact, when Kiangela attempted to dispute the debt, Rent Recovery told her that her disputes would not even be investigated unless she provided pictures or emails proving her claims.

41. On information and belief, it is the policy, practice, or procedure of Rent Collect not to engage in a meaningful dispute investigation unless it receives pictures or emails from consumers *proving* their dispute allegations.

42. Rent Recovery's violations of law caused Kiangela emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

43. Rent Recovery's violations of law caused Kiangela's credit score to unlawfully drop.

44. Rent Recovery's violations of law caused Kiangela to obtain financing quotes at higher interest rates than would have otherwise been offered.

45. Rent Recovery's violations of law collection efforts also intruded upon Kiangela's privacy.

46. Rent Recovery's violations of law also caused Kiangela to waste hours consuming considerable digital content on the internet which clogged her computer's Random Access Memory (RAM), added undesirable and unavoidable cookies to her internet browser, caused her to incur additional out of pocket energy expenses to power her computer, forced her to incur higher than usual internet bandwidth usages which increased her carbon footprint on Earth.

47. Rent Recovery's violations of law forced her to spend considerable time locating a consumer lawyer to help redress Rent Recovery's violation of Federal Law.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

48. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 47 above as if fully set forth herein.

49. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

50. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 47 above as if fully set forth herein.

51. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson,*

*Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

52. Defendant's policies and procedures, as described in Paragraphs 31 through 36 *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

53. Defendant's practice, therefore, violates Section 1692d of the FDCPA, which provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

*See* 15 U.S.C. §1692d.

54. Because Defendant's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

55. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 47 above as if fully set forth herein.

56. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

6

## **COUNT FOUR**

### **Violation of the Fair Debt Collection Practices Act**

57. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 47 above as if fully set forth herein.

58. CFPB Regulation F (effective November 30, 2021) prohibits so-called "passive collectors" or "parking" a debt on a consumer's credit report.

59. The CFPB explained in the rule's supplemental information:

> [C]onsumers who have not been informed about the debt are likely to be unaware that they have a debt in collection unless they obtain and review their consumer report. In turn, many consumers may not obtain their consumer reports until they apply for credit, housing, employment, or another product or service provided by an entity that reviews consumer reports during the application process. At that point, consumers may feel pressure to pay debts that they otherwise would dispute, including debts they do not owe, or may face the denial of an application, a higher interest rate, or other negative consequences.

60. CFPB Regulation F requires debt collectors to engage in certain acts, wait a certain amount of time, and not furnish debt information to the credit reporting bureaus until the debt collector complies with those provisions as set out in Regulation F. *See* 12 C.F.R. § 1006.30(a).

61. More specifically, CFPB Regulation F prohibits a debt collector from furnishing information about a debt to a credit reporting bureau prior to contacting the consumer and, if by letter or electronic message, the debt collector must wait a reasonable time to make sure the message is delivered and monitor for non-deliveries. Failure to do so violates 15 U.S.C. § 1692f.

62. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FIVE

### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act

63. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 47 above as if fully set forth herein.

64. The ICFA states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

65. Defendant violated 815 ILCS 505/2 through the unfair and deceptive nature of its conduct in relation to Plaintiff.

66. Defendant violated 815 ILCS 505/2 by demanding Plaintiff pay a debt that she was not legally obligated to pay.

67. The ICFA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendant.

68. The ICFA further states:

> "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

69. Plaintiff has suffered significant actual damages resulting from Defendant's unlawful practices, including both out of pocket expenses, as well as emotional pain and suffering.

8

## JURY DEMAND

70. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

71. Plaintiff prays for the following relief:

   a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

   b. Judgment against Defendant for actual and punitive damages as provided under 815 ILCS 505/10a(a).

   c. Judgment against Defendant for costs and reasonable attorney fees as provided under 815 ILCS 505/10a(c).

   d. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date:  November 4, 2022          By: /s/ Jeffrey S. Hyslip
                                 Jeffrey S. Hyslip, Esq.
                                 Hyslip Legal, LLC
                                 207 S. Harrison Street, Suite A
                                 Algonquin, IL 60102
                                 Phone: 614-362-3322
                                 Email: jeffrey@hysliplegal.com

                                 *Attorney for Plaintiff*